Thank you, Your Honor. May it please the Court, my name is Mick Levine. I represent the estate of Arlene Matus. I want to just take a moment and thank you for bringing me here. When I left Arizona, it was a balmy 110 degrees. When I arrived here, it was 50 degrees cooler, so I appreciate getting me out of the heat. This is our version of the Valley of the Sun. And it's beautiful, Your Honor. Indeed. I think the question in this case really boils down to what would the Arizona Supreme Court do? We have a statute, 1431.10. 1431.10 sets out what the estate of somebody who is deceased may bring as claims. That statute isn't restricted for loss of future income to the estate. So, counsel, let's say that I were to hypothetically agree with you that if I were deciding what the statute meant de novo, that the plain meaning of the statute as the Arizona Intermediate Court said going the other way is as you say it is. Let's hypothetically say I were to say that. How does this fit within the certification statute 12-1861? It seems like there is controlling precedent in the intermediate appellate courts of Arizona. And it doesn't really seem to me that this is an issue that would come up very often simply because normally there would be somebody else who would be able to get this, would be able to bring this claim under the other statute. But assume for the moment that, again, that I think the plain language of the statute, although not the restatement, supports your view. How do we fit this in 12-1861? Sure, Your Honor. And I want to attack some of the precepts that you put in there. First, I don't believe that this is a very rare occurrence. 12-612 is our wrongful death statute. It specifically indicates who can get a benefit from filing a lawsuit. The statutory beneficiaries are very limited. It's only the spouse, the parents, and the children. But as the Court in Manion pointed out, the Federal District Courts in Arizona pointed out, when somebody such as a child dies or in that particular case it was an adult who passed away, sometimes these loss of future income claims come up. And I think based upon both the Manion case, the Poppled case, the Rodriguez case, all cases that have occurred within the last six or so years, this is an issue of recurring importance. It keeps on coming up as to whether or not statutory... But I mean, as the Intermediate Court in Arizona said, this seems to have been the law for a long time. And I will readily admit that I'm not familiar with the criteria that the Arizona Supreme Court uses to review decisions of the Intermediate Court. But they have decided not to review the decisions of the Arizona Intermediate Court that go the other way. So, again, I'm still having some trouble figuring out how this fits into the certification statute. Sure. And as for one of the other things that you mentioned there, the Berrigan case is what the Intermediate Court of Appeals relied upon recently. Berrigan made a general statement as to what survival statutes are for. It didn't directly address this issue regarding loss of future income to an estate. But, Mr. Levine, if the state courts of Arizona feel bound by Berrigan, why shouldn't we? The state courts of Arizona and two unpublished opinions said that they felt bound by Berrigan. Now, unpublished decisions do not have precedential value in Arizona. But, counsel, if I understand correctly, the Arizona Supreme Court was expressly asked to review Rodriguez and Popal, which admittedly were not published. But turn it down. That's correct. What should we read into that, if anything? I don't know that you can, Your Honor. And the reason why I say that is both of those cases are not published decisions. They don't have any precedent. But the Arizona Supreme Court knew what it was about. I'm sorry? The Arizona Supreme Court knew what they were about. Those specific cases, the parties asked the Arizona Supreme Court to take the issue. Yes. They're asking us to do that with this case. But in those cases, they said, no, we're not taking it. So what's the reason to that? And both in those cases said that they weren't taking them. I assume that one of the reasons that the Arizona Supreme Court looks at in order to determine whether or not to take cases is whether or not it's a precedential value. And both of those cases weren't. Why would that necessarily matter? We have the U.S. Supreme Court taking our mem dispos, which are not published either. We get quite a few of those, actually. So why should the published or non-published aspect of this make any difference? Arizona's, you know, they look at this. They decided not to take it. They made a determination. And as far as I know, I don't know any you could refer to that would say, because it was not published, that's why they didn't take it. I can't say that I know why the Arizona Supreme Court didn't take it. But one of the things that they do look at is the precedential value of the case below. And since both of these cases were not published decisions, they only have persuasive, not precedential value. So this issue can continue to reoccur to the Court of Appeals. And the Court of Appeals doesn't have to take either one of cases. What role, if any, does the Arizona District Court's decision play in our analysis? I believe that the Arizona District Court is just one more data point, Your Honor, for how someone would interpret what the Arizona Supreme Court would do with this particular case. It's not precedential. It's not binding on us in any way, right? No, of course not, Your Honor. Arizona District Courts aren't even precedential or binding on other Arizona District Courts. We know that from this case. Yes, we do, Your Honor. Just as a similar kind of way to explain this, there was a case, Doe v. Arizona Board of Regents. It was a non-published decision in Arizona. It was not mentioned in our briefing because the later case didn't come along until afterwards. In that particular case, it was dealing with statute of limitations and whether or not the statute of limitations was exceeded in that particular case. In a same type of case, a different division of the Arizona Court of Appeals found a different way. And so the idea here is that a non-published decision can be overturned by another division of the Arizona Court of Appeals, and it can be overturned by the Arizona Supreme Court. Let me ask you this. Let's assume just arguendo. If we didn't certify this to the Arizona Supreme Court, what is your best argument that we could, under our precedent of how we interpret the rulings of an intermediate state court, what's your best argument that you win? I don't know whether you're looking at specifically these issues or whether you're looking at how it is that the federal courts treat state appellate courts. In our case law, we're told that we can, if there are intermediate Arizona courts in this case who ruled in a particular way, and we believe that's what the Arizona Supreme Court would do in this case because they didn't take it, that we could in fact rule the way they did, relying upon those intermediate courts. So my question to you is, with that in mind, if we decided not to certify this to the Arizona Supreme Court, what's your best argument that notwithstanding Rodriguez-Popal and the one other case, that we could do that? I think my best argument is that you look at the data points, and that's relatively clear from Ninth Circuit precedent. Data points? Yes, the data points. What data points can you look at in order to interpret how the Arizona Supreme Court would decide? How would you delineate or list the data points that we should look at? Certainly, one of the data points is the statute itself. Another data point is how the Arizona Supreme Court looks at statutes and interprets statutes in other cases. Another data point is the Quintero v. Rogers case, which was looking at whether an estate can bring a claim for punitive damages. In that particular case, they said because it wasn't accepted in 143110, they could bring a claim for punitive damages. Mr. Levine, I guess on that and to turn to the, I guess, the merits of the statute, I think you wield expresso unius, the canon here. I have questions about what is the unius and what would be the alterius under that. Why isn't it a fair reading of the statute to believe that the unius, the subject of the statute that's being expressed, are simply causes of action that arise during one's life so that the alterius of the lost wage damages would not be included? I get lost in the Latin, but I think I can explain this. In other words, everything that the statute refers to are causes of action that arise during one's life. You're bringing a cause of action that arises afterwards. Why would that be? Why would the statute tell us anything about that cause of action? Sure. And what the statute says is that every cause of action, except for a limited few, may survive. But it also talks about a portion of a cause of action, that of pain and suffering. And it says that pain and suffering damages do not survive. And so it's talking about damages. Arizona law ---- Roberts, but those are damages that are only available. Are there any other damages? You're trying to say that this should be viewed as speaking somehow to the availability of post-death damages. Are there any other damages that the statute speaks to that would suggest it's addressed to the different category of damages that you're seeking here? I don't think that the statute differentiates between pre-death and post-death damages. Well, where does the statute seem to address anything, any cause of action that would arise after a decedent's death? I don't think a person has pain and suffering after their death. Right. That's a rather esoteric argument. But I think that by ---- But promise to marry, seduction, libel, all of these are categorically different than the claim you're bringing. Right? I think that those are causes of action, yes. But it does also speak to the damages available on a personal injury case. And the way that I read the statute ---- What role, if any, does the restatement second of tort section 926A play in this? And, Your Honor, I think that the restatement would actually speak to this if there wasn't a statute that already did. Arizona looks to the restatement in the absence of an Arizona statute that applies. So the restatement could apply if we didn't already have a statute that talks to survival actions. And I understand that. But, I mean, to the degree we're looking at data points as you refer to them, that one's not helpful to you, is it? I believe you're right, Your Honor, that that would not be helpful. But as Arizona has recognized time after time, if we have law that applies to the particular subject, we don't look to the restatement. We only look to the restatement if we don't have law. If you have clear law. I'm sorry? If you have clear law. The question here, of course, is we're trying to decide what this means. And that's why I ask what role, if any, the restatement should play in our analysis. Well, I think 143110 is clear law as to what actions survive when a person dies and what damages do and, by exclusion, what damages don't. Counsel, this next series of questions may be a little unfair. And I apologize for that. But as far as I can tell, in one of the unpublished Arizona cases, Rodriguez v. Lytle, you were the counsel for plaintiff? I was. Are there any arguments that you have made today as to why we should give this to the Arizona Supreme Court in asking them to grant certiorari or whatever the procedure is in Arizona in that case? I think we have more data points now than we did at that particular time. For instance, we have the Poppel v. Beck decision that came out after the Rodriguez v. Lytle decision. And at least one of those members of that court said if we didn't have Berrigan, which I felt wasn't good law, he would have found the same way that the Mannion Court did. By the way, I was counsel of record in Mannion as well. So I do think that we have additional data points. I do think that we have additional information for this court to consider. The other fact that we have as far as that goes is I don't believe that the Quintero v. Rogers case was argued in the Rodriguez v. Lytle case. I think that one was something that was overlooked. Plus, as I see that my time is running out, I do want to talk about... Do you want to save any of your time? It's up to you. I want to talk about one case real quick. Henry Riggins, 544 P. 3rd 64. It's a 2024 case that just came out. The Arizona Supreme Court there upheld expressius unius est exclusio alterius, saying that it's appropriate when the unius can reasonably be thought to be an expression of all that shares in the grant or prohibition involved. Here, I believe that by excluding pain and suffering damages and not excluding a loss of future income, which is available in a personal injury action, this is an appropriate application of that. Thank you. Okay. Thank you very much. Do either of my colleagues have additional questions? Very well. Thanks very much. All right. So we're going to hear from Ms. Allen. Good morning. May it please the court, my name is Lynn Allen and I represent the defendant, Custom U.S. Our position is that the district court's decision was correct based on existing Arizona law, as well as... And it must be affirmed on appeal. It is consistent with a published Arizona court of appeals decision and two unpublished court of appeals decisions. And I want to touch on that briefly. We acknowledge that unpublished memorandum decisions of the court of appeals are not binding precedent, but the Arizona Supreme Court Rule 111 allows us to cite those to any court for their persuasive value. So they are useful as a data point pursuant to the Supreme Court Rule that says they can be persuasive. Ms. Allen, could you speak to, I guess, your view of any Arizona practice or rule that would allow us to read anything into the denial of the Supreme Court's review of these cases? Does that mean anything or have they disclaimed any meaning? I would say that there's nothing that says that we can read anything into it. I think there may even be a rule that says you can't. But I think it is important to this panel on the issue of whether you certify the issue to the Arizona Supreme Court. There is a Ninth Circuit case we cited in our brief that says that the court can consider where there are no conflicting Arizona state court of appeals decisions, and we do not have any here, and that the state Supreme Court has recently denied a petition for review on the same issue. It was unnecessary to certify the question, and that's the Herrera v. Zumi's case. So, counsel, I'm not discounting this as harm, but the only harm that would come from our certifying this question to the Arizona Supreme Court would be some delay and some expense. Is there any other harm that would come were we to do that? And, again, I'm not discounting that delay and expense are relevant and can be important, but in terms of other potential harms, is there anything else that would come from our certifying this question? I can't think of any off the top of my head, but I would pause it out there. It's not just the delay in you certifying the question and then the Supreme Court issuing a decision. The Arizona Supreme Court could turn it down. They could decline to answer the certified question. Then we're back here with you asking you to make a decision. And how do we factor in your friend's actual appeal to the Arizona Supreme Court on the Rodriguez case, which was unpublished? Dealing with an identical issue, really, as far as I can tell, and the Supreme Court said no. Do we factor that into our decision whether to certify the question to the Supreme Court? Yes, absolutely, under the Zumi's case. And by the way, I was defense counsel in that case. So, Mr. Levine and I. You were on the other side as well. I was. You two should go out and have a drink afterwards. That's perfect. We may do that. On the statute itself, Ms. Allen, what's your best merits argument in response to Judge Bennett's hypothetical plain reading of the statute? Where do you view it as excluding this action? Well, in my view, it's not. This really isn't an issue of statutory interpretation, by the way. We're talking about whether the survival statute is what it is. The decedent, if the decedent had a claim before her death, in common law, that would be abated upon her death. Her estate would not be able to bring any claim whatsoever. The statute allows her estate to bring the claim, if she had a claim, that existed before her death. So, when we talk about the statute and about what's excluded from the statute, what's excluded is from that pre-death cause of action. And pain and suffering is expressly excluded because Arizona does not allow the estate to recover the decedent's pain and suffering sustained prior to death. Pain and suffering is expressly excluded, but nothing else is expressly excluded, yes? That is true. So, every cause of action, except a cause of action, et cetera, et cetera, et cetera, may be asserted, except upon the death. Damages for pain and suffering should not be. I'm not going to try my Latin, but it seems to me that that fits right in with that Latin maximum. I mean, that doesn't go to — and when I look at the Rodriguez case, which you're obviously familiar with, the argument was this rule is contrary to the plain language, and the appellate court didn't say no, no, you're wrong. By quoting a Latin maxim or some other maxim, it said, no, no, you're wrong because we've already said you're wrong, not that you're wrong about the plain language. The court of appeal is bringing it back to what a survival action is. A survival action is not a cause of action that the estate in its capacity as an estate has. So Mr. Levine spoke to, well, the estate has been damaged because she died and the estate is sustained damage. But similar to that, damages for pain and suffering is not a cause of action. It's not, but let me give you a hypothetical. Let's say that Ms. Mattis had survived the accident. Let's say she survived for two weeks. She would have had pain and suffering, right? She would have lived and sustained and suffered pain and suffering. And then had she then died two weeks later, her estate could bring her personal injury claim. But the statute says they can't recover that pain and suffering, but they could recover any other damages that she sustained up until the time of her death. But you still agree with me that damages for pain and suffering is not a cause of action? It is not. It is not. It is a type of damage. But again, a type of damage that the decedent could have suffered prior to her death and that without that language, the estate could bring that claim. When you and your friend were dealing with the appeal to the Arizona Supreme Court of Rodriguez, what arguments did either one of you make, if you recall, to the Arizona Supreme Court in his attempt to get them to take it and your attempt to tell them not to take it? I did not go back and review the briefs, but I know that my arguments are the same as I have here, although, you know, probably dove a little more deeply into Mannion and why in that context. You deal with the Latin maxim that my colleague has referred to. He speaks in Latin a great deal in our conference, and so we have the following briefs. Exclusively Latin, actually. He flirted us into that. I believe that Mr. Lein was making the argument about the statutory interpretation. Our argument goes back to what a survival statute is and what it is that it revives or does not allow that cause of action to be abated. And then going back to Berrigan, when we talk about what cause of action survive, a cause of action for negligence and damages, according to Berrigan, damages that the decedent sustained before their death, economic damages. We're talking here about the scope of the statute as being about survival actions. Does loss of future wages survive the death, or does it only arise upon the creation of the estate at death? Well, there's no loss of future earnings unless, let me back up. So there's no claim there to survive, is your point? Yes, that is my point. The decedent died instantaneously. She did not sustain that harm. It's not that the estate sustained harm. It's whether the decedent sustained the harm. And so just, you know, hypothetically, Berrigan is a really good example. Mr. Berrigan had been injured severely in an accident. He, you know, sustained, he lived for two years and then died from complications. And during that two-year period of time, he had economic loss in the form of medical bills, loss of earnings, as well as that pain and suffering, which didn't survive. He had filed a lawsuit while he was still alive against the tortfeasor, and then he died. And then his father, who was a wrongful death beneficiary, as well as the representative of the estate, wanted to bring that cause of action on behalf of the estate for the pre-death damages of medical bills and loss of earnings. The Court of Appeals initially said, no, you can only have one. You can either have a wrongful death case or you can have the survival action. And the Court of Appeals in Berrigan said, no, no, no, those are two separate harms. The first is the harm to the individual while they were living. That survives their death and can be brought. And then there's the claim of the wrongful death beneficiaries, which also can be brought. So they're not mutually exclusive. But the key point to that decision, which is not dicta because it was central to the Court's holding, was that the survival action only applies to the damages that the decedent sustained before their death. And so that ties in squarely with our district court's decision, which was that Ms. Mattis had died instantaneously. She did not sustain any damages while she was still alive, and that the estate could only bring the claim for the funeral expenses. If there were heirs who were eligible to bring a wrongful death action here, would that create the possibility of double recovery? If the court were to, if her loss of future earnings claims survived her death and could be brought, I would say yes. Well, it would be yes unless the Arizona Supreme Court said one or the other, right? That could be one result, although... It would be unlikely, don't you think, that the Arizona Supreme Court would create a remedy where the exact same damage could be obtained by two separate individuals? I think that's highly unlikely. And I think your argument is that Berrigan basically said just that. Exactly. Except here, it's recovered by nobody. It is because she didn't have any wrongful death beneficiaries. So there is an enrichment from that to your client. I mean, whether it's unjust or whether it's provided by the statute or not are different questions, but there is, your client here has a benefit because of the lack of the statutory errors. I'm glad that you brought that up because I did want to address that. If it's a benefit to the defendant, I would say no. Damages in a tort case are there to compensate the victim, right? It's compensation. It's not punishment. It's not just or not just. So we're looking at damages that are recoverable and not whether the defendant benefits from same. The defendant would benefit from same if Ms. Mattis had been unemployed or had been a senior and did not have a lot. It depends on the plaintiff. You take them as you find them. So it's not necessarily any benefit to the defendant that she lost her life, but rather that there are no damages for which the law allows compensation. Has your client paid damages based on any other cause of action arising out of this accident? No. This is the only claim that's been made. You asked a question about, you know, the duplicative damages. I will say in the Rodriguez case, they were teenagers. They were survived by their parents. The parents brought the claim under the estate of their children as opposed to their own wrongful death claim. We can't, you know, speak to why that happened, but they did make that election, presumably because of Mannion. And Mannion really focused on the fact that there was no chance for duplicative damages, which, you know, is kind of misguided when really the nature of a survival action as set forth in the restatement. I know one of you brought that up, but the restatement talks about survival or revival of tort actions. The damages for a tort not involving death for which the tort visa is responsible are not affected by the death of either party. And then it says that it limits recovery for harms suffered before death. And that is not inconsistent with Arizona law. In fact, it's entirely consistent with Arizona law. So when we talk about those data points, the data points that the Arizona Supreme Court would consider is the Barragan case, maybe to a lesser degree Rodriguez and Popol. But it's highly unlikely the court would look to the Mannion case, which is not even binding on the same judge that issued the decision. So it's our position that this court can predict what the Arizona Supreme Court would decide. It would decide and follow Barragan for lack of any other precedent and two opportunities to take the issue up. And would find that the answer to the question is the estates and damages are limited to those sustained by the decedent before her death. I have about less than a minute left. Are there any other questions? Other questions? Thank you very much for the opportunity. Thank you very much to both counsel for your argument in this case. The case just argued is submitted, and we thank you both.
judges: SMITH, BENNETT, JOHNSTONE